<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> REMSEN ASSOCIATES, INC. *et al.*, <br><br> Defendants. | Civil Action No. 22-02477 (GC) (RLS) <br><br> **<u>MEMORANDUM OPINION</u>** |

**<u>CASTNER, District Judge</u>**

**THIS MATTER** comes before the Court upon Plaintiff G & G Closed Circuit Events, LLC's Motion for Default Judgment against Defendants Remsen Associates, Inc. t/a Los Amigos (Los Amigos) and Bernabe Rodriguez pursuant to Federal Rule of Civil Procedure (Rule) 55(b). (ECF No. 16.) Defendants have not responded or otherwise appeared in this case. The Court has carefully reviewed Plaintiff's submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's motion is **GRANTED**.

**I.     BACKGROUND**

  **A.     Factual Background**

Plaintiff is "a commercial distributor and licensor of sporting events" that owned the "exclusive nationwide commercial distribution . . . rights to the *Saul 'Canelo' Alvarez v. Daniel Jacobs, WBA/WBC/IBF Middleweight Championship Fight Program*" (the "Program"), which was "telecast nationwide on May 4, 2019." (ECF No. 1 ¶¶ 19, 23.) Pursuant to its distribution rights, Plaintiff entered into sublicensing agreements with various commercial entities, allowing

them to publicly exhibit the Program in exchange for a license fee.  (*Id.* ¶¶ 20-22.)  Plaintiff's programming is encrypted and made available only to Plaintiff's customers.  (ECF No. 17 at 4.[1])  As a result, Plaintiff's programming cannot be "mistakenly, innocently, or accidentally intercepted" by noncustomers.  (*Id.*)  To combat piracy, Plaintiff hires licensed private investigators to identify commercial establishments that broadcast Plaintiff's programming without a sublicense.  (*Id.* at 2-3.)

Rodriguez owns and operates Los Amigos, a bar and restaurant in New Brunswick, New Jersey.  (ECF No. 1 ¶¶ 7-8.)  On May 4, 2019, Plaintiff's investigator Michael Coigne visited Los Amigos and observed the Program playing on a television.  (ECF No. 16-2 at 7; ECF No. 17 at 34.)  When entering Los Amigos, Coigne did not pay a cover charge, but he noticed a poster advertising the Program at the front entrance.  (ECF No. 17 at 33-34.)  Inside, Coigne counted between 72 and 78 patrons.  (*Id.* at 34.)  According to Plaintiff, Defendants never purchased the requisite license to exhibit the Program.  (ECF No. 1 ¶¶ 28-29.)  Based on Los Amigos's estimated capacity of 100 people, the license fee would have cost $1,500.00.  (ECF No. 17 at 34, 39.)

Two prior judgments have been entered against Defendants for similar allegations of "piracy."  (ECF No. 16-2 at 24.)  First, Plaintiff's counsel attests that in January 2017, judgment was entered against Los Amigos in the Superior Court of New Jersey in *J & J Sports Productions v. Remsen Associates, Inc. t/a Los Amigos et al.*, Docket Number MID-L-006512-16.  (ECF No. 16-1 at 5.)  Second, this Court entered default judgment against Defendants in *G & G Closed Circuit Events, LLC v. Remsen Associates, Inc. t/a Los Amigos*, Civ. No. 19-13019, 2021 WL 1139873 (D.N.J. Mar. 24, 2021) and 2023 WL 2266225 (D.N.J. Feb. 28, 2023).

---

[1]  Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

### B.     Procedural History

On April 28, 2022, Plaintiff filed a four-count complaint against Defendants. (*See generally* ECF No. 1.) Counts One and Two allege violations of the Communications Act under 47 U.S.C. §§ 605 and 553, respectively. (*Id.* ¶¶ 27-41.) Count Three claims unlawful interference with prospective economic advantage. (*Id.* ¶¶ 42-47.) Count Four claims unlawful interference with contractual relations. (*Id.* ¶¶ 48-53.) On June 26, 2023, the Clerk entered default against Defendants. Plaintiff now moves for default judgment as to Counts One and Two. (ECF No. 16-2 at 9.) To date, Defendants have not responded or appeared in this action.

## II.    LEGAL STANDARD

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once a default has been entered, the plaintiff may then seek the entry of a default judgment — either by the clerk or the court itself — under Rule 55(b). Fed. R. Civ. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

In entering default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction, (2) the defendant was properly served, (3) the complaint sufficiently pleads a

cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. T.J. LLC*, Civ. No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, Civ. No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015)). In addition, the court must evaluate three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (same). If these factors weigh in favor of the moving party, the court may grant default judgment.

### III. DISCUSSION

#### A. Subject-Matter & Personal Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citations omitted).

Here, the Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff brings claims under the Communications Act, 47 U.S.C. §§ 553 & 605. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they arise out of the same case or controversy as the federal claims. (*See generally* ECF No. 1.)

The Court also has personal jurisdiction over Defendants. Rodriguez is a resident of New Jersey. (ECF No. 1 ¶ 4; ECF No. 16-1 at 10; ECF No. 16-2 at 9.) Los Amigos is a New Jersey corporation with its principal place of business located in New Jersey. (*See* ECF No. 1 ¶ 6; ECF

4

No. 16-1 at 10.) Because "the place of incorporation and principal place of business" are bases for general personal jurisdiction over a corporation, the Court has personal jurisdiction over Los Amigos. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

### B.   Service of Process

Under Rule 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Plaintiff served Los Amigos by delivering a copy of the summons and complaint to Anderson Azcona, Los Amigos's manager and a person authorized to accept service on Los Amigos's behalf. (ECF No. 4; ECF No. 11 ¶ 2(c).)

On March 6, 2023, the Court granted Plaintiff's motion to permit substituted service on Rodriguez. (ECF No. 11.) On March 29, Plaintiff served Rodriguez pursuant to the terms of the Court's March 6, 2023 Order. (ECF No. 13.) Accordingly, Defendants have been properly served.

### C.   Sufficiency of Plaintiff's Causes of Action

Plaintiff seeks to hold Los Amigos and Rodriguez individually liable under §§ 553 and 605 of the Communications Act.[2] (ECF No. 16-2 at 9.) Both statutes prohibit the unauthorized interception of communications, providing "alternative forms of relief depending on *how* the defendant intercepted the program at issue — i.e., the interception of actual airborne satellite transmissions (section 605) or the interception of transmissions once they reach the cable system (section 553)." *J & J Sports Prods., Inc, v. Munguti*, Civ. No. 06-1282, 2007 WL 928479, at *1

---

[2]   Plaintiff does not move for default judgment on its claims for unlawful interference with prospective economic advantage and unlawful interference with contractual relations. Therefore, the Court need not evaluate the sufficiency of those claims. *See G & G Closed Circuit Events, LLC v. La Famosa, Inc.*, Civ. No. 19-13025, 2020 WL 3129540, at *3 n.2 (D.N.J. June 12, 2020).

(D.N.J. Mar. 27, 2007). When a defendant's failure to appear has deprived the plaintiff of the ability to determine which statute applies, courts in this district "award damages under either (but not both) sections' damages provisions." *J & J Sports Prods., Inc. v. Tribiri-Tabara, LLC*, Civ. Nos. 18-13867 & 18-13918, 2019 WL 2754955, at *2 n.1 (D.N.J. July 2, 2019) (citing *Joe Hand Promotions, Inc. v. Waldron*, Civ. No. 11-849, 2013 WL 1007398, at *1 n.2 (D.N.J. Mar. 13, 2013)). Because the two statutes "share a nearly identical remedial scheme," the Court will conduct its analysis with reference to both statutes. *See Waldron*, 2013 WL 1007398, at *1 n.2; *Remsen*, 2021 WL 1139873, at *3.

### 1. *Los Amigos*

To state a claim against Los Amigos under either § 553 or 605, Plaintiff must allege that Los Amigos "(1) intercepted a broadcast; (2) was not authorized to intercept the broadcast; and (3) showed the broadcast to others." *Tribiri-Tabara*, 2019 WL 2754955, at *2.

Here, Plaintiff has adequately pled that Los Amigos intercepted and showed the Program to others without authorization. First, Plaintiff asserts that it purchased the exclusive commercial distribution rights to the Program and never sublicensed the Program to Defendants. (ECF No. 1 ¶¶ 19, 28-29.) Second, Plaintiff accuses Defendants of intercepting the Program. (*Id.* ¶ 28.) Plaintiff alleges that the Program was encrypted so that the event could be played only after being "decoded with electronic decoding equipment." (*Id.* ¶ 24.) Plaintiff's president attests that to the best of his knowledge, Defendants could not have broadcast the Program unless they intentionally intercepted it. (ECF No. 17 at 4.) Third, Plaintiff alleges that on May 4, 2019, Defendants showed the Program "on at least one of four televisions" when the bar "was filled close to maximum capacity." (ECF No. 1 ¶ 26.) Plaintiff's investigator also attests that he saw Los Amigos show the Program to between 72 and 78 patrons. (*Id.* at 33.) Therefore, Plaintiff has sufficiently pled a

legitimate cause of action against Los Amigos under §§ 553 and 605.

### 2. *Rodriguez*

To hold Rodriguez liable under either statute, Plaintiff must show that the individual had (1) "the right and ability to supervise the violative activity, although he need not actually be supervising," and (2) "a direct financial interest in the violation." *J&J Sports Prods. Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (citations omitted). For example, in *La Famosa*, the court granted default judgment under § 605 against the president and owner of a bar that had shown a licensed program without authorization, finding that the individual "had a right and ability to supervise the interception of the Fight Program and a direct financial interest in the interception of the Fight Program, which resulted in income and profit to himself and La Famosa Bar." 2020 WL 3129540, at *3 (citations omitted). There, the plaintiff had also alleged that the individual "was the moving and active conscious force behind the operation," which the court found sufficient. *Id.*

Here, as in *La Famosa*, Plaintiff alleges that Rodriguez is the president, chief executive officer, and registered agent of Los Amigos. (ECF No. 1 ¶¶ 8-9; ECF No. 16-1 at 15-29.) Plaintiff also asserts that "as the President and Chief Executive Officer," Rodriguez was the "moving and active conscious force behind the operation." (ECF No. 1 ¶ 18.) As Plaintiff has plausibly alleged that Rodriguez (1) had the right and ability to supervise the Program's interception and (2) had a direct financial interest in such interception, Plaintiff has sufficiently stated a claim against Rodriguez under §§ 553 and 605. (*Id.* ¶¶ 11, 14); *Ramsey*, 757 F. App'x at 95; *Remsen*, 2023 WL 2266225, at *3-4 (finding that G & G stated a valid claim against Rodriguez under the same facts).

### D. Default Judgment is Appropriate

As noted above, the Court must next consider (1) "prejudice to the plaintiff if default is denied," (2) "whether the defendant appears to have a litigable defense," and (3) "whether [the]

defendant's delay is due to culpable conduct." *Chamberlain,* 210 F.3d at 164 (citation omitted).

In this case, all three factors weigh in favor of granting a default judgment. As to the first factor, when a defendant "fails to respond to a plaintiff's claims, the plaintiff suffers prejudice absent a default judgment because [the] plaintiff is left with no other means to vindicate [its] claims." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, Civ. No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (citation omitted); *Waldron*, 2013 WL 1007398, at *4. Here, Defendants have failed to participate after being properly served, and nothing in the record indicates that Plaintiff has an alternative means of vindicating its claims. The second "factor is either inconclusive, or it weighs slightly in Plaintiff's favor" because Rodriguez has not appeared in this matter and there is no indication that Rodriguez has a cognizable defense to Plaintiff's allegations. *Id.* (citation omitted). Finally, Rodriguez's failure to respond permits the Court to draw an inference of culpability on his part. *See Tribiri-Tabara*, 2019 WL 2754955, at *3 ("When a defendant has failed to answer, move, or respond to a complaint, culpability is presumed."). Accordingly, the Court finds that default judgment is appropriate.

E. **Damages**

Under § 605(e)(3)(C)(i), plaintiffs can pursue either "actual damages suffered . . . as a result of the violation" or "statutory damages . . . not less than $1,000 or more than $10,000, as the court considers just." *See also Remsen*, 2021 WL 1139873, at *4 ("Section 605 permits a plaintiff to elect between actual and statutory damages."). "[S]ince recovery of actual damages by its nature serves only a compensatory function, the statutory damages award should do likewise." *Waldron*, 2013 WL 1007398, at *6.

Here, Plaintiff seeks statutory damages and requests an award of $3,000.00, or twice the amount of the licensing fee that Defendants would have paid to broadcast the Program. (ECF No.

8

16-2 at 30; ECF No. 17 at 33-34, 39.)  But as in other cases, Plaintiff, "while registering its disagreement, concedes that courts in this district have looked at actual damages as the way to measure the appropriate amount of statutory damages to be awarded."  *La Famosa*, 2020 WL 3129540, at *4 (concluding that an award of statutory damages should approximate actual damages); *see also Waldron*, 2013 WL 1007398, at *6-7 (reasoning that because "recovery of actual damages by its nature serves only a compensatory function, the statutory damages award should do likewise," especially where the plaintiff may also seek enhanced damages against commercial defendants); *J&J Sports Prods., Inc. v. Old Bailey Corp.*, Civ. No. 18-8829, 2019 WL 4267856, at *3-4 (D.N.J. Sept. 9, 2019) (same).  (ECF No. 16-2 at 17-18.)  Thus, because the licensing fee here would have cost Defendants $1,500.00, Plaintiff will receive $1,500.00 in statutory damages under § 605(e)(3)(C)(i)(II).  *See also Remsen*, 2021 WL 1139873, at *4 (awarding "statutory damages . . . equal to the sublicense fee that an establishment of Los Amigos's capacity would have charged, rather than Plaintiff's request for double that amount").

Additionally, where "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," enhanced damages are available under § 605(e)(3)(C)(ii).  These damages aim to prevent unjust enrichment and create specific and general deterrence for future violations.  *See Waldron*, 2013 WL 1007398, at *7 (noting that enhanced damages reflect "the need for both specific and general deterrence, and . . . the seriousness of the defaulting party's conduct").  Here, Plaintiff alleges Defendants' willfulness and intent to benefit financially.  (ECF No. 1 ¶ 31.)  Plaintiff has provided evidence that because the Program was encrypted, it was virtually impossible to intercept unintentionally, which courts have found sufficient to establish willful conduct.  *See Waldron*, 2013 WL 1007398, at *3.  (ECF No. 17 at 4.)  And "because Defendants displayed the [Program] at their place of business, the Court may

9

infer that Defendants' conduct was 'for the purposes of direct or indirect commercial advantage or indirect pecuniary gain.'" *See Waldron*, 2013 WL 1007398, at *3 (quoting 47 U.S.C. §§ 605(e)(3)(C)(ii) & 553(c)(3)(B)).  Thus, the Court may award Plaintiff enhanced damages.

Plaintiff seeks an award of $15,000.00 in enhanced damages.  (ECF No. 16-2 at 30.)  The Third Circuit has not established a formula to calculate an appropriate award of enhanced damages. *See Waldron*, 2013 WL 1007398, at *7. ("A review of the relevant case law in this Circuit convinces the Court that there are few bright line rules governing . . . its discretion to award enhanced damages." (footnote omitted) (collecting cases)).  Courts in this district typically use a multi-factor test set forth in *Kingvision Pay-Per-View Ltd. v. Rodriguez*[3] (the "*Rodriguez* factors"). *See, e.g.*, *Waldron*, 2013 WL 1007398, at *7 (collecting cases); *Old Bailey Corp.*, 2019 WL 4267856, at *4; *Remsen*, 2021 WL 1139873, at *5.  The *Rodriguez* factors include whether the defendant has (1) intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) reaped substantial profits from the unauthorized exhibition in question; (3) caused significant actual damages to the plaintiff; (4) advertised its intent to broadcast the event; and (5) levied a cover charge or significant premiums on its food and drink because of the broadcast. *Waldron*, 2013 WL 1007398, at *7 (citing *Rodriguez*, 2003 WL 548891, at *2).

In the previous case before this Court wherein Plaintiff sought enhanced damages against the same Defendants, the Court considered these factors and awarded enhanced damages of double the licensing fee. *See Remsen*, 2021 WL 1139873, at *5.  In doing so, the Court found no evidence that Defendants reaped substantial profits, in part because on the night of the pirated program there were approximately 20 patrons present at Los Amigos. *Id.*  Nor was there any evidence that Defendants had previously intercepted unauthorized broadcasts, advertised the program, charged

---

[3]    2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003).

a cover fee, or charged premiums on its food and drinks. *Id.* Under those circumstances, the Court found that an award of $6,600.00, consisting of $2,200.00 in statutory damages (the cost of the licensing fee) and $4,400.00 in enhanced damages (or double the amount of statutory damages), would "adequately compensate Plaintiff and serve as a deterrent to Los Amigos and others" and matched what other courts had awarded in similar circumstances. *Id.* (collecting cases).

Here, by contrast, the Court now has evidence of two prior judgments against Defendants for similar violations. (*See* ECF No. 16-2 at 24; ECF No. 16-1 at 4-5.) Moreover, Plaintiff's investigator attests that although he did not pay a cover charge when he entered Los Amigos, he did observe a poster advertising the Program at the front entrance. (ECF No. 17 at 33-34.) Inside, he counted between 72 and 78 patrons, nearly four times as many as the prior case. (*Id.* at 34.)

The Court finds that based on the additional aggravating factors present here, an award of enhanced statutory damages that exceeds the judgment issued in the prior case between the same parties is appropriate to further deter future violations and adequately compensate Plaintiff. Therefore, the Court will award Plaintiff $6,000.00 in enhanced damages, or four times the amount of statutory damages. *See Remsen*, 2021 WL 1139873, at *5 (awarding twice the amount of statutory damages in the absence of most of the *Rodriguez* factors); *La Famosa*, 2020 WL 3129540, at *5 (same).

In sum, the Court will award Plaintiff $7,500.00, consisting of $1,500.00 in statutory damages under § 605(e)(3)(C)(i)(II) and $6,000.00 in enhanced damages under § 605(e)(3)(C)(ii).

### F. Costs and Reasonable Attorneys' Fees

Section 605(e)(3)(B)(iii) directs the Court to award "full costs, including . . . reasonable attorneys' fees" to an aggrieved party who prevails. Here, Plaintiff requests leave to submit a request for costs and attorneys' fees within 30 days after the entry of judgment. (ECF No. 16-2 at 30.) The Court grants Plaintiff's request. *See Remsen*, 2021 WL 1139873, at *5 n.4.

### IV. CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiff's Motion for Default Judgment is **GRANTED**. An appropriate Order follows.

Dated: July 18 2024

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE